IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03573-PAB-NRN

JAVIER AYALA,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

---

## ORDER

---

    This matter is before the Court on Defendant State Farm's Motion for Summary Judgment [Docket No. 44].  Plaintiff responded to defendant's motion, Docket No. 47, and defendant replied.  Docket No. 52.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

    Plaintiff was injured in an automobile accident caused by an uninsured driver. Docket No. 44 at 5, ¶ 1.  At the time of the accident, plaintiff carried $50,000 in uninsured motorist ("UM") coverage with defendant.  *Id.* at 6, ¶ 2.  On January 9, 2020, defendant paid plaintiff $3,696.73 for undisputed medical bills, consistent with defendant's obligation under *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501 (Colo. 2018).[2]  *Id.*, ¶ 3.  On March 3, 2020, defendant spoke with plaintiff's counsel, who

---

[1] The following facts are undisputed unless otherwise noted.

[2] In *Fisher*, the Colorado Supreme Court held that insurers "have a duty to pay

confirmed the amount of *Fisher* payments and stated that she would follow up with any updates regarding plaintiff's injury and treatment.  *Id.*, ¶ 4.

On March 23, 2020, plaintiff's counsel sent defendant a demand for "benefits owed," listing $7,927.21 in medical expenses, including $593.13 in medical interpretation charges, and requesting a response by April 13, 2020.  *Id.*, ¶ 5[3]; Docket No. 47 at 7, ¶ 5.  The letter requested that all responses be in writing.  Docket No. 44 at 6, ¶ 6.  On April 9, 2020, defendant acknowledged receipt of the March 23 letter and asked whether plaintiff was still receiving treatment or had completed treatment.  *Id.*, ¶ 7.[4]

---

undisputed portions of a UIM claim . . . even though other portions of the claim remain disputed."  418 P.3d at 502; *see also Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *9 (D. Colo. Mar. 28, 2022).  This payment was for the initial medical bills that defendant received before plaintiff sent any bills for the UM part of his claim.  Docket No. 47 at 7, ¶ 2.

[3] Defendant claims that this was a "time-limited demand," *see id.*, which plaintiff disputes.  Docket No. 47 at 4, ¶ 5.  Plaintiff is correct that the letter defendant cites in support of this fact does not indicate that the offer was time-limited or would expire by April 13, 2020.  The letter states, "[i]f you are unable to respond by April 13, 2020, please let us know how much additional time is needed and the reason for the delay." *See* Docket No. 44-6 at 1.  Plaintiff claims that the medical interpretation charge was "deducted," *see id.* at 8, ¶ 11, yet the "Auto Injury Evaluation," which plaintiff relies upon, does not reflect that a medical interpretation charge was deducted.  *See* Docket No. 47-5 at 4.

[4] Plaintiff purports to dispute this fact.  *See* Docket No. 47 at 4–5, ¶ 7.  Plaintiff claims that defendant "had already concluded its evaluation prior to sending the letter" to plaintiff.  *Id.*  Plaintiff also argues that defendant's examiner "documented that it did not seem that [plaintiff' had concluded treatment based on his medical treatment records."  *Id.*  Plaintiff, however, does not contest that the April 9 letter asked whether plaintiff was still receiving treatment.  Accordingly, the Court deems this fact admitted.  Moreover, to the extent plaintiff's additional response is an argument that the April 9 question about plaintiff's continued treatment is irrelevant because defendant had already made its coverage determination, plaintiff's response is inappropriate.  The Court's practice standards state that "**[l]egal** argument is not permitted [in the fact section] and should be reserved for separate portions of the briefs.  If, for example, a

On April 13, 2020, defendant issued a second *Fisher* payment for $11,054.92. *Id.*, ¶ 8.[5]  The same day, defendant sent plaintiff an "initial offer" of $21,100.00 to settle plaintiff's UM claim.   *Id.* at 6–7, ¶ 9.  Plaintiff responded the following day asking defendant to tender the "undisputed initial offer of $21,100" and requesting an itemized breakdown of the offer, but not accepting the offer as a settlement offer.  *Id.* at 7, ¶¶ 10–11.  Defendant provided a breakdown of the $21,100.00 offer on April 16, 2020 and informed plaintiff that medical bills had not been reduced and that "general damages are still in negotiations."  *Id.*, ¶ 12.[6]  Although plaintiff continued to receive treatment after February 2020, which is the date of the last bills and records that he provided to defendant, plaintiff provided no additional information regarding his claim and did not respond to defendant's question regarding whether he was continuing to receive treatment or had any additional medical records or bills for defendant to consider.  *Id.*, 7–8, ¶¶ 14, 18.[7]

---

party believes that an established fact is immaterial that belief should be expressed in the part of the brief devoted to legal argument, and the fact should be admitted." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.

[5] Plaintiff claims that defendant was aware of $11,648.05 in bills as of April 2020. Docket No. 47 at 8, ¶ 10.  Plaintiff cites the Auto Injury Evaluation, yet does not provide a specific reference to support plaintiff's claim, which the practice standards require. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ii. Plaintiff also cites the March 23 letter demanding $7,927.71, Docket No. 47-4 at 21, yet it is not clear how that letter supports plaintiff's statement that defendant was aware of $11,648.05 in bills.

[6] Defendant's April 9, 2020, April 13, 2020, and April 16, 2020 correspondence does not mention plaintiff's interpretation charge.  *See* Docket No. 47 at 8, ¶ 12.

[7] Plaintiff states that, as early as April 9, 2020, defendant "was aware" that plaintiff had pending additional treatment and interpretation charges.  Docket No. 47 at 7, ¶ 1.  Plaintiff cites the Auto Injury Evaluation, which appears to be dated June 8, 2020 and therefore does not support his assertion about what defendant knew on April 9.

On May 28, 2020, plaintiff filed suit against defendant in Colorado state court. *Id.* at 7, ¶ 15. He did not provide any notice to defendant that he intended to file suit. *Id.* at 7–8, ¶ 16. Before filing this lawsuit, plaintiff had submitted $11,054.92 in medical bills to defendant. *Id.* at 8, ¶ 18.[8] Before the lawsuit was filed, defendant had paid plaintiff $14,751.65. *Id.*, ¶ 19.[9] After filing suit, plaintiff disclosed additional medical bills, many of which were incurred pre-suit and, for the first time, disclosed an estimate for future treatment. *Id.*, ¶ 20.[10] December 3, 2020 was the first time that plaintiff disclosed any

---

*See* Docket No. 47-5 at 4. Moreover, although the Auto Injury Evaluation states, "Tx continues" under an entry for Longmont Chiro and Wellness, *id.*, which may indicate continuing treatment, and defendant admits that the Auto Injury Evaluation shows recommendations for cryotherapy and home exercise, Docket No. 47 at 8, ¶ 16, it is undisputed that plaintiff did not provide medical bills in support of continued treatment until after he filed this lawsuit, as discussed below.

[8] Plaintiff, who speaks Spanish, requires interpretation services. *See* Docket No. 47 at 7, ¶ 4. He purports to dispute that he submitted $11,054.92 in bills by arguing that defendant "had removed and not considered the interpretation charges within" the $11,054.92 figure. *Id.* at 6, ¶ 18. That argument is not responsive to this fact. Moreover, as defendant notes, plaintiff's first amended complaint alleges that "[p]laintiff has submitted medical bills in the amount of $11,054.92 to State Farm." Docket No. 5 at 2, ¶ 15. Accordingly, the Court deems this fact admitted.

[9] Defendant overpaid plaintiff by paying the $3,696.73 twice. *See* Docket No. 47 at 6, ¶ 19; *see also id.* at 14 ("State Farm first paid $3,696.73 when it received medical bills at the beginning of Mr. Ayala's claim. State Farm received an additional $7,951.32 in medical bills from Mr. Ayala. State Farm added up the $7,951.31 and $3,696.73 for a total medical expense of $11,648.05. State Farm failed to recall its original payment and added $3,696.73 to the $11,648.05."); Docket No. 44 at 14 (noting overpayment).

[10] Plaintiff states that defendant knew of plaintiff's treatment when defendant completed the Auto Injury Evaluation and that defendant's claim examiner "needed to confirm additional information before considering additional treatment." Docket No. 47 at 6, ¶ 20. Plaintiff, however, admits that he demanded only $7,927.71 on March 23, 2020, Docket No. 44 at 6, ¶ 5, yet continued to seek treatment well after that without submitting any additional medical bills. *Id.* at 7–8, ¶¶ 13, 14, 17, 21. Moreover, the June 8, 2020 Auto Injury Evaluation that plaintiff cites does not support plaintiff's contention that defendant already knew of plaintiff's treatment or that the examiner needed additional information. *See* Docket No. 47-5 at 4. Defendant, however, admits

medical records or treatment since March 23, 2020.  *Id.*, ¶ 21.  Plaintiff now claims

$36,582.51 in past medical bills.  *Id.*, ¶ 22.  After receiving these bills and additional

medical records, defendant provided additional payment to plaintiff so that its

cumulative payment was $50,000, which is the full UM policy limit.  *Id.*, ¶ 23.

Plaintiff's insurance policy contains the following cooperation clause, which

states:

> 4.  **Insured's Duty to Cooperate With Us**
>     a.  The *insured* must cooperate with *us* and, when asked, assist *us* in:
>         (1) making settlements;
>         (2) securing and giving evidence; and
>         (3) attending, and getting witnesses to attend, depositions, hearings, and trials.
>     b.  The *insured* must not, except at his or her own cost, voluntarily:
>         (1) make any payment to others; or
>         (2) assume any obligation to others unless authorized by the terms of this policy.
>     c.  Any person or organization making claim under this policy must, when we require, give us proof of loss on forms we furnish.

*Id.* at 8–9, ¶ 24.  The policy also requires:

> 7. **Other Duties Under Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Uninsured Motor Vehicle Property Damage Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage**
> A *person* making claim under:
>     a.  Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:
>         (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury.
>         (2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*.  A copy of the report will be sent to the **person** upon written request;

---

that the document does not provide any amounts for future medical bills or future pain
and suffering.  *See* Docket No. 47 at 9, ¶ 20; Docket No. 52 at 6, ¶ 20 ("[I]t is undisputed
that the evaluation did not include amounts for future damages.").

> (3) provide written authorization for **us** to obtain:
>     (a) medical bills;
>     (b) medical records;
>     (c) wage, salary, and employment information; and
>     (d) any other information we deem necessary to substantiate
>     the claim.

*Id.* at 9–10, ¶ 25.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead

must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS[11]

In his complaint, plaintiff brings three claims: (1) breach of contract, (2) statutory bad faith, and (3) common-law bad faith. *See* Docket No. 5 at 4–6, ¶¶ 29–43. Because defendant has paid the full amount of plaintiff's coverage, plaintiff agrees to dismiss his breach of contract claim. *See* Docket No. 47 at 9 ("Mr. Ayala agrees, for expediency's sake, to dismissal of his UM claim.").

In his statutory bad-faith claim, plaintiff alleges that defendant "failed to make payment of [UM] benefits to [p]laintiff without a reasonable basis for its action," which has caused plaintiff's loss in the "compensation that is due to him." Docket No. 5 at 5, ¶¶ 35–36. In his common-law bad-faith claim, plaintiff alleges that defendant "knew its conduct was unreasonable or disregarded the fact that its conduct was unreasonable," which damaged plaintiff. *Id.* at 6, ¶¶ 42–43.

Colo. Rev. Stat. § 10-3-1116 entitles a plaintiff to relief if an insurer unreasonably delays or denies covered benefits under Colo. Rev. Stat. § 10-3-1115.

---

[11] Because jurisdiction is based on diversity, the Court applies Colorado law in resolving the motion. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state."). The parties also assume that Colorado law applies. *See generally* Docket Nos. 44, 47, 52.

Section 10-3-1115 provides in relevant part:

A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant. . . .

[F]or the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

Colo. Rev. Stat. §§ 10-3-1115(1)(a), (b)(II)(B)(2).  Pursuant to § 10-3-1115, an insurer who delays or denies payment to its insured without a reasonable basis breaches its statutory duty of good faith and fair dealing.  *See Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *3 (D. Colo. Jan. 23, 2020).  To prove a claim of unreasonable delay or denial, an insured must demonstrate that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis.  *See Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."  *Vaccaro v. Am Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012); *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  But, "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law."  *Id.*  The burden to establish unreasonableness lies with plaintiff.  *See Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished) (applying Colorado law).

"The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards."  *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415

(Colo. 2004) (common law bad faith)); *Fisher*, 419 P.3d at 994.  Further, "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision."  *Schultz*, 429 P.3d at 848 (quoting *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996)); *see also State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.").  An insurer unreasonably delays a claim when it has no "reasonable basis" for denying or delaying an insured's claim.  An insurer's denial of a claim does not constitute statutory bad faith if the insurer has a reasonable basis for the denial.  *See Wagner v. Am. Fam. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014) (unpublished); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (quoting *Vaccaro*, 275 P.3d at 759–60) ("[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably.")).  Thus, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence.  *See Bd. of Cnty. Comm'rs v. Auslaender*, 745 P.2d 999, 1001 (Colo. 1987) (interpreting "without a reasonable basis" in a statute regarding the award of attorney fees in litigation against a public entity); *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-KMT, 2020 WL 406077, at *12 (D. Colo. Jan. 23, 2020) (applying *Auslaender* in insurance bad faith context); *see also Vansky*, 2022 WL 900160, at *4.

For an insured to prevail on a common-law bad faith claim, the insured must

prove that (1) the insurer's conduct was unreasonable and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable. *Vansky*, 2022 WL 900160, at *9 (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985); *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997)).

Defendant argues that plaintiff has forfeited coverage under the UM policy because he failed to cooperate with defendant. Docket No. 44 at 11–16. "Under Colorado law an insured may forfeit the right to recover under an insurance policy if he or she fails to cooperate in violation of a policy provision." *Walker v. State Farm Fire & Cas. Co.*, No. 16-cv-00118-PAB-STV, 2017 WL 1386341, at *3 (D. Colo. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1386346 (D. Colo. Mar. 17, 2017). "When an insurer asserts a noncooperation defense, the insured will likely be held to have forfeited his or her right to recover under an insurance policy when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect and this failure to cooperate materially and substantially disadvantaged the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001)). "Material and substantial disadvantage" is determined by

> whether the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid. If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist. Specifically, it has been held that the insurer can deny coverage, following an insured's refusal to provide documents reasonably requested by the insurer, on the basis that the insurer has been prejudiced because the insured's refusal prejudices the insurer by putting the insurer in the untenable position of either denying coverage or paying the claim without the means to investigate its validity.

*Walker*, 2017 WL 1386341, at *4 (quoting 1 Allan D. Windt, *Insurance Claims & Disputes* § 3.2 (6th ed. 2016)).

Plaintiff's policy requires "[a]ny person or organization making claim under [the] policy" to, among other things "secur[e] and giv[e] evidence," "give [] proof of loss," and "give [defendant] all the details about the death, injury, treatment, and other information that [defendant] may need as soon as reasonably possible after the injured insured is first examined or treated for the injury."  Docket No. 44 at 8–10, ¶¶ 24–25.

Defendant relies principally on *Hall v. Allstate Fire & Cas. Ins. Co.*, 20 F.4th 1319 (10th Cir. 2021).  *See generally id.*  In that case, the Tenth Circuit considered whether an insured's failure to cooperate materially and substantially disadvantaged his insurer, relieving the insurer from paying benefits.  *Hall*, 20 F.4th at 1323.  There, the insured submitted medical bills, and the insurer paid, pursuant to *Fisher*, the amount that exceeded the insured's settlement with the at-fault driver.  *Hall v. Allstate Fire & Cas. Ins. Co.*, No. 19-cv-02604-DDD-NYW, 2021 WL 119344, at *1 (D. Colo. Jan. 12, 2021).  The insurer attempted to call the insured five times to get additional information about the insured's medical bills, but received no response.  *Id.*  Instead, the insured filed the lawsuit.  *Id.*  The court concluded that "[t]he only conclusion to be drawn from the record . . . is that [the insured] failed to cooperate with [the insurer]."  *Id.* at *2.  The court therefore determined that there could be no breach of contract – because the insured failed to perform under the policy's cooperation clause – and that the insured's failure to cooperate materially and substantially disadvantaged the insurer because the insurer was "put in the untenable position of either denying coverage or paying the claim without the means to investigate its validity."  *Id.* at *3 (quoting *Walker*, 2017 WL

1386341, at *4).  The court entered summary judgment against the plaintiff on his breach of contract claim.  *Id.*

After dismissing the insured's contract claim, the court concluded that, because "when an insurer properly denies coverage, the insured has no viable claim for unreasonable denial or bad faith," the court also granted summary judgment for the insurer on the insured's bad-faith claims.  *Id.* at *4.  The court explained that, "[w]hile [the insured] asserts that failure to cooperate is a defense to its breach of contract claim and not to its bad faith claim, this court agrees with [insurer] that in order to prevail on its statutory unreasonable delay/denial claim, [an insured] first has to prove entitlement to benefits."  *Id.* (quoting *Edge Constr., LLC v. Owners Ins. Co.*, No. 14-cv-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015), *aff'd sub nom. Sable Cove Condo. Ass'n v. Owners Ins. Co.*, 668 F. App'x 847 (10th Cir. 2016) (unpublished)).  The Tenth Circuit affirmed.  *Hall*, 20 F.4th at 1324 ("Mr. Hall simply failed to answer any of Allstate's requests for additional information, so he violated his basic contractual duty to provide information to Allstate. . . .  Allstate was prevented from conducting a reasonable investigation because Mr. Hall failed to respond to any of its communications regarding information about additional treatment." (citing *Walker*, 2017 WL 1386341, at *4)).  The Tenth Circuit noted that, "[b]ecause the district court found that Allstate properly denied coverage through its failure to cooperate defense, it properly granted summary judgment as to Mr. Hall's bad faith claim."  *Id.* at 1325.

Plaintiff attempts to distinguish *Hall* as relevant only to breach-of-contract claims, not to bad-faith claims.  Docket No. 47 at 9–13.  Plaintiff is correct that *Hall* was principally a breach-of-contract case, as the court in *Hall* granted the insurer summary

judgment on its failure-to-cooperate defense to the insured's breach-of-contract claim.
*See Hall*, 2021 WL 119344, at *2–4.  Here, however, defendant insists that plaintiff's
breach-of-contract claim is moot and, in response, plaintiff has agreed to dismiss that
claim.  Thus, *Hall* would appear to be distinguishable.  However, plaintiff's agreement to
dismiss his breach-of-contract claim is not a concession that defendant did not breach
the policy.  Nor is defendant's argument that plaintiff's first claim is moot a concession
that defendant breached the policy.  Rather, defendant argues that the claim is not
justiciable because plaintiff "can recover no additional contractual benefits under his first
claim."  Docket No. 44 at 10.  Plaintiff agrees to dismiss his claim, recognizing that,
because defendant paid the full amount of the policy limit, he could not recover any
additional money for that claim.  Docket No. 47 at 9.  Thus, although the parties agree
that plaintiff cannot recover anything more on his breach-of-contract claim, plaintiff's
claim that defendant breached the insurance contract remains the predicate for his bad-
faith claims, and therefore *Hall* is relevant to the Court's analysis.[12]

As in *Hall*, the undisputed facts show that plaintiff failed to cooperate with
defendant as required by the policy.  Plaintiff's policy required him to "cooperate" in
"securing and giving evidence" and to "give [] proof of loss" and "give [defendant] all the
details about the death, injury, treatment, and other information that [defendant] may

---

[12] Although the bulk of the district court's order in *Hall* was focused on the
insured's breach of contract claim, the court also explained that, "[w]hile [the insured]
asserts that failure to cooperate is a defense to its breach of contract claim and not to its
bad faith claim, this court agrees with [insurer] that in order to prevail on its statutory
unreasonable delay/denial claim, [an insured] first has to prove entitlement to benefits."
*Hall*, 2021 WL 119344, at *4 (quoting *Edge Constr., LLC*, 2015 WL 4035567, at *6).
The court dismissed the insured's bad faith claims on this basis.  *Id.*  The Tenth Circuit
affirmed.  *Hall*, 20 F.4th at 1325.  Thus, an insured's failure to cooperate can preclude a
breach-of-contract claim as well as a bad-faith claim.

need as soon as reasonably possible after the injured insured is first examined or treated for the injury." Docket No. 44 at 8–10, ¶¶ 24–25. Plaintiff failed to do so. The undisputed facts establish that, on March 3, 2020, plaintiff's counsel confirmed to defendant that she would continue to update defendant with information about plaintiff's injuries and treatment. *Id.* at 6, ¶ 4. On April 9, 2020, defendant asked plaintiff if he was still receiving treatment or had completed treatment. *Id.*, ¶ 7. Plaintiff did not respond or submit any additional medical records, or disclose additional treatment, between March 23, 2020 and May 28, 2020, when plaintiff filed this lawsuit. *Id.* at 8, ¶ 21. On April 13, 2020, to "bring th[e] claim to a conclusion," defendant offered $21,100 to settle plaintiff's UM claim based on the information plaintiff submitted. *Id.* at 6–7, ¶¶ 8–9; Docket No. 44-10 at 1. Plaintiff rejected the offer. Docket No. 44 at 7, ¶ 10. Instead of telling defendant that he was continuing to receive treatment, plaintiff filed this lawsuit on May 28, 2020. Between April 9, 2020, when defendant last asked plaintiff if he was still receiving medical treatment, and May 28, 2020, when he filed this lawsuit, plaintiff received additional medical care on April 22, 2020; May 1, 2020; May 4, 2020; May 11, 2020; May 18, 2020; and May 27, 2020. *Id.*, ¶ 13. Plaintiff, therefore, failed to cooperate by not giving defendant all of the evidence, proof of loss, and details about his injury and treatment, which the policy required. *Id.* at 8–10, ¶¶ 24–25.

Plaintiff's failure to cooperate is not, by itself, sufficient for defendant to show that it was materially and substantially disadvantaged by plaintiff's conduct. Defendant must also show that it was prevented from completing an investigation. *Hall*, 2021 WL 119344, at *3; *Walker*, 2017 WL 1386341, at *4. The undisputed facts show that plaintiff filed this lawsuit and only disclosed his additional medical records six months

after he filed the lawsuit through discovery.  This materially and substantially disadvantaged defendant because defendant could not investigate plaintiff's claim for additional medical benefits without knowing whether plaintiff was still receiving treatment and, therefore, could not pay benefits before plaintiff filed this lawsuit.  As in *Hall*, plaintiff could have provided defendant additional information about his ongoing and future treatment, as plaintiff's policy required.  This information could have allowed defendant to investigate plaintiff's claim further and could have supported the claim by providing a basis for defendant to pay what plaintiff believed he was owed.  *See id.*, at *3.  Instead, plaintiff's "failure to cooperate forced [defendant] to defend a bad faith lawsuit."  *See Hall*, 20 F.4th at 1325.[13]

Plaintiff argues that defendant's payment of plaintiff's policy limit is a relevant difference between this case and *Hall*.  Docket No. 47 at 10.  Although the insurer in *Hall* apparently did not pay the policy limit, it is not clear how the fact that defendant here did pay plaintiff's policy limit distinguishes this case from *Hall*.  The undisputed facts show that defendant paid the policy limit after plaintiff filed this lawsuit.  Docket No. 44 at 8, ¶ 23.  Such payment does not bear on the issue of plaintiff's duty to cooperate

---

[13] The parties argue about whether defendant paid plaintiff's $593.13 medical interpretation bills, yet there is no dispute that defendant inadvertently overpaid plaintiff by $3,696.73 before plaintiff filed this lawsuit.  Docket No. 47 at 6, ¶ 19; *see also id.* at 14; Docket No. 44 at 14.  Plaintiff provides no facts, disputed or undisputed, that defendant recouped this money or that defendant even knew that the interpretation charges were disputed before suit.  Thus, the factual dispute about whether defendant paid plaintiff for the interpretation charges is immaterial given this overpayment, which more than covered the interpretation bills.  *See Faustin*, 423 F.3d at 1198; *Allen*, 119 F.3d at 839.  Moreover, although defendant understood that plaintiff is a Spanish-speaker, as it communicated with him in both English and Spanish, *see, e.g.*, Docket No. 47-4 at 1–4, plaintiff deprived defendant of the ability to investigate these interpretation charges before he filed this lawsuit.  *See Hall*, 20 F.4th at 1325.

before the filing of the case.

Plaintiff insists that defendant acted unreasonably by failing to timely pay the $21,100 "that it initially valued [plaintiff's] claim to be worth."  Docket No. 47 at 13. Plaintiff is again mistaken.  Although defendant offered to settle plaintiff's claim for that amount, plaintiff provides no facts, disputed or undisputed, that defendant valued plaintiff's claim at that level.  Nor must an insurer's settlement offer include a detailed break-down of every bill or category of damages that the insurer accepted.  *See, e.g.*, *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-KMT, 2020 WL 406077, at *9 (D. Colo. Jan. 23, 2020) (noting absence of authority "for the proposition that an insurer's settlement offer must include a detailed break down").

Because plaintiff failed to cooperate with defendant before he filed this lawsuit, *Hall* forecloses plaintiff's breach-of-contract claim, which is also fatal to plaintiff's bad-faith claims.  *See Hall*, 20 F.4th at 1325 ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." (quoting *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009)).  Thus, contrary to plaintiff's argument that there is "no support for [defendant's] most audacious contention, that 'a successful failure-to-cooperate defense operates not only as a bar to a breach of contract claim for UM/UIM benefits – it also acts as a bar to allegations of statutory or common law bad faith,'" Docket No. 47 at 12 (quoting Docket No. 44 at 17), a plaintiff's failure to cooperate can ultimately defeat a bad-faith claim.

Defendant argues that, in the alternative, plaintiff cannot show any unreasonableness in the handling of plaintiff's claim.  Docket No. 44 at 17–20.  Plaintiff

responds that it was unreasonable for defendant's adjuster to "arbitrarily erect[] roadblocks to deny and delay" plaintiff's claim.  Docket No. 47 at 16.  It is not clear what these "roadblocks" were.  However, to the extent plaintiff believes that defendant misclassified his medical interpretation charge and did not pay that charge as a medical expense, plaintiff does not identify how a jury could consider that bad faith.  It appears that plaintiff first demanded payment for the interpretation fees on March 23, 2020.  *See id.* at 7, ¶ 5 (citing Docket No. 47-4 at 21).  Defendant overpaid plaintiff by more than $3,500 – which defendant did not recoup – before plaintiff filed this lawsuit just two months later, on May 28, 2020.  Docket No. 44 at 8, ¶ 19; Docket No. 1-4 at 1.[14]  Even if the overpayment did not mention interpretation charges, plaintiff does not show that a reasonable jury could find evidence of bad faith when plaintiff's interpretation charge was only $593.13, which was more than covered by the overpayment.

As the Colorado Supreme Court has noted, "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision."  *Schultz*, 429 P.3d at 848.  The information that plaintiff provided to defendant before he filed suit, which was incomplete due to plaintiff's failure to cooperate, did not show that plaintiff was entitled to additional benefits.  That was reason enough for defendant not to pay additional benefits at that time.  *See Wagner*, 569 F. App'x at 580 (noting that there is "nothing unreasonable about [an insurance company's] denial of [a plaintiff's] claim because it had a reasonable basis for its action").  Plaintiff has failed to identify a genuine issue of material fact that would

---

[14] It is possible that the medical interpretation charge was actually part of defendant's $21,100 offer on April 16, 2020.  *See* Docket No. 44-12 at 1.

prevent a reasonable jury from finding that defendant acted reasonably in its pre-suit handling of plaintiff's claim given the information before defendant at the time. *See Anderson*, 2020 WL 406077, at *12. As a result, and in the alternative, defendant is entitled to summary judgment on plaintiff's bad faith claims. *See, e.g.*, G*arcia v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-01504-CMA-MEH, 2021 WL 5770229, at *3 (D. Colo. Dec. 6, 2021) (dismissing common-law bad faith claim where plaintiff failed to identify a genuine dispute of material fact regarding defendant's reasonableness); *Stemple v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-02381-CMA-STV, 2019 WL 2866587, at *5 n.5 (D. Colo. July 3, 2019) ("Plaintiff cannot establish the first element of her bad faith claim, rendering it unnecessary for the Court to analyze the second element of the claim."). Accordingly, the Court will dismiss plaintiff's second and third claims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant State Farm's Motion for Summary Judgment [Docket No. 44] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are **DISMISSED with prejudice**. It is further

**ORDERED** that this case is closed.

DATED September 16, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

18